UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBIN GARNETT** | * | **CIVIL ACTION NO. 25-1518** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **DG LOUISIANA D/B/A DOLLAR GENERAL, ABC INSURANCE COMPANY, AND JAKOYIA MILLER** | *<br>*<br>* | **MAGISTRATE JUDGE EVA J. DOSSIER** |

\* \* \* \* \* \* \*

## ORDER & REASONS

Before the Court is a Motion to Remand filed by Plaintiff Robin Garnett. R. Doc. 5. Defendant DG Louisiana, LLC opposes the motion. R. Doc. 6. Plaintiff did not file a reply. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.     BACKGROUND**

This suit is the result of an alleged slip and fall by Plaintiff at a Dollar General in Paulina, Louisiana. R. Doc. 1-2 at 2. Plaintiff filed this personal injury action in state court against DG Louisiana, LLC ("Dollar General") and its manager Jakoyia Miller ("Miller"), asserting that they are liable for her injuries resulting from the fall because Dollar General and Miller allowed a "hazardous and dangerous condition" to be present on the property. *Id.* at 1–2. Plaintiff filed this lawsuit on June 30, 2024. *Id.*

Dollar General filed its first notice of removal on August 27, 2024 on the basis of diversity jurisdiction, arguing that Miller's citizenship should be ignored because she was improperly joined for the purpose of destroying diversity. *See* R. Doc. 1 at 4–5, Case No. 24-2111 (E.D. La. Aug. 27, 2024). This Court remanded the case to state court after determining that Plaintiff sufficiently pleaded a viable claim against nondiverse defendant Miller. R. Doc. 13 at 5–6, Case No. 24-2111 (E.D. La. Dec. 3, 2024).

1

Dollar General filed its second notice of removal under this docket number on July 23, 2025, over a year after Plaintiff filed her state court suit. R. Doc. 1. It premised this second removal on allegations that Plaintiff acted in bad faith to prevent Dollar General from removing the case within one year of Plaintiff's initiation of the state court action. *Id.* at 4–7. Dollar General put forth a timeline of events that it asserts demonstrates that Plaintiff manufactured delays, like setting and canceling Miller's deposition, to allow for the one-year removal period to pass. Dollar General attached e-mails demonstrating its efforts to encourage the scheduling of Miller's deposition as early as September 2024. *See* R. Doc. 1-5 at 16–17. The parties did not schedule Miller's deposition until early April 2025, about ten months after Plaintiff filed suit, and set it for May 22, 2025, just over one month before the one-year removal period would elapse. R. Doc. 1-6.

Shortly after setting Miller's deposition, Miller filed a motion for summary judgment, which the state court set for hearing on May 27, 2025. R. Doc. 1 at 5; R. Doc. 1-7. Plaintiff then moved to continue the hearing, arguing that she had not yet had adequate time to complete discovery, including Miller's deposition, and that the Court should allow Plaintiff time to take Miller's deposition before filing her opposition because "[t]he testimony of Ms. Miller is absolutely critical to Plaintiff's ability to meaningfully oppose Defendant's motion." R. Doc. 1-11. The state court moved the hearing to June 23, 2025, a few weeks after the one-year removal period. R. Doc. 1-12. Dollar General contends that shortly after the court moved the hearing date, Plaintiff canceled Miller's May 22nd deposition and requested new dates in July or August—*after* the re-set summary judgment hearing date and, importantly, well after the June 10, 2025 removal deadline. R. Doc. 1 at 6; R. Doc. 1-13. Then, instead of *again* asking the state court to push out the hearing on Miller's summary judgment to account for Miller's rescheduled July or August deposition date, Plaintiff filed an opposition to the summary judgment and proceeded to attend the

2

June 23rd hearing. R. Doc. 1 at 6; R. Doc. 1-14. Defendant represents that after the original e-mail canceling Miller's May deposition, Plaintiff's counsel made no efforts to reschedule. R. Doc. 1 at 6. Instead, after the hearing on Miller's summary judgment motion, the state court granted her motion and entered judgment in her favor. R. Doc. 1-4. Dismissing Miller created complete diversity between Plaintiff and Dollar General. *See* R. Doc. 1-2; R. Doc. 1 at 7–8.

Defendant argues that Plaintiff's above-outlined actions were taken in bad faith with the express purpose of preventing Defendant from timely removing this action by keeping a nondiverse defendant in the suit beyond the one-year mark. Now, Plaintiff moves to remand this case to state court because Defendant removed it beyond the one-year mark. R. Doc. 5. Defendant argues this case is properly before this Court since (1) the parties are diverse now that the state court entered a judgment dismissing Miller from the case—on July 2, 2025, less than a month after the one-year removal deadline, and (2) "Plaintiff's litigation conduct in this case is consistent with the intent of preventing Defendant from removing the case," so the Court should permit Defendant's untimely removal. R. Doc. 1 at 7.

## II.   PRESENT MOTION

Plaintiff moves this Court for an order remanding her case to state court for the second time. R. Doc. 5. She argues that Defendant has not demonstrated that she deliberately acted in bad faith to prevent it from removing the case within the statutory one-year time limit. R. Doc. 5-1 at 5. She cites to numerous cases in this circuit that stand for the proposition that a defendant's burden of proving bad faith is high, and that courts are reluctant to find bad faith absent clear and convincing evidence. *Id.* at 5–6. She points out that this Court has already determined that Plaintiff brought a viable claim against Miller, arguing that this shows that Plaintiff has not attempted to defeat diversity via Miller's joinder. *Id.* Plaintiff asserts that the conduct Defendant characterizes

as bad faith is actually a result of "common scheduling obstacles" that "occur in nearly every case." *Id.* at 6–7.

Defendant opposes the motion. R. Doc. 6. It resubmits the timeline included in its notice of removal, arguing that Plaintiff consistently delayed written discovery and depositions until the one-year mark passed. *Id.* at 4. Defendant categorizes Plaintiff's request to depose Miller in July or August of 2025—*after* the one-year mark—as exhibitory of her bad faith tactics. *Id.* It further argues that Plaintiff's "delay tactics ceased as soon as the 1-year anniversary expired because the objective, i.e., getting past the 1-year anniversary, was achieved." *Id.* at 4–5. Thus, it requests the Court to find that Plaintiff acted in bad faith, deny her motion to remand, and allow this matter to proceed in federal court. *Id.* at 5.

### III.  LEGAL STANDARD

The statute governing removal provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Accordingly, a defendant may remove a case to federal court if the federal court would have had original jurisdiction over the action. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."). The Fifth Circuit has explained that the removal statute should be strictly construed. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubt concerning the basis of jurisdiction should be resolved in favor of remand. *Acuna v. Brown & Root*, 200 F.3d 335, 339 (5th Cir. 2000).

4

In diversity cases such as this one, the removal statute instructs that these cases "may not be removed . . . on the basis of [diversity jurisdiction] more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1441(c)(1). Subpart (c)(3)(B) states that if the notice is filed after the one-year period "and the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith." *Id.* at § 1441(c)(3)(B). Beyond that, courts can also consider whether a plaintiff's general conduct "illustrates manipulation of the removal statute so as to prevent [the defendant] from removing the case to federal court." *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017). Overall, "the question is what motivated the plaintiff in the *past*—that is, whether the plaintiff's litigation conduct meant to 'prevent a defendant from removing the action.'" *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019) (citing 28 U.S.C. § 1446(c)(1)).

"Courts must determine whether bad faith exists on a case-by-case basis, balancing the equitable exception with 'the general rule that removal jurisdiction is to be strictly construed [in favor of remand], as its application deprives a state court of a case properly before it and thereby implicates important federalism concerns.'" *Vallecillo v. Wells Fargo Home Mortg. Fin., Inc.*, No. 16-935, 2017 WL 9935522, at *2 (W.D. Tex. Sept. 18, 2017) (quoting *Carey v. Allstate Ins. Co.*, No. 13-2293, 2013 WL 5970487, at *3 (W.D. La. Nov. 7, 2013)). Defendants bear the burden of demonstrating bad faith, and "a determination of bad faith is subject to a high burden, [so] courts are reluctant to find a party acted in bad faith without clear and convincing proof." *Boney v. Lowe's Home Ctrs., LLC*, No. 19-1211, 2019 WL 5579206, at *2 (N.D. Tex. Oct. 29, 2019) (internal quotation marks omitted). Additionally, "[g]iven that doubts in favor of removal must be resolved

in favor of remand, the estoppel doctrine requires a 'transparent attempt to circumvent federal jurisdiction.'" *Williams v. Mor-Tem Risk Mgmt. Servs., Inc.*, No. 11-1408, 2012 WL 1014752, at *5 (W.D. La. Mar. 22, 2012).

IV. **ANALYSIS**

Plaintiff asks that this Court remand her case because Defendant's removal was untimely, arguing that Defendant did not demonstrate in its notice of removal that Plaintiff acted in bad faith with respect to Plaintiff's pursuit of her claims against Miller. Defendant requests the Court decline to remand this case and instead find that Plaintiff deliberately and in bad faith kept Miller in this suit until after the one-year mark passed. After careful consideration, the Court finds that Defendant has met its burden of demonstrating by clear and convincing evidence that Plaintiff employed a bad-faith litigation strategy to defeat Defendant's ability to remove this case.

As a threshold matter, the Court notes that Plaintiff did not attempt to conceal that the amount in controversy in this matter exceeds $75,000.00. *See* R. Doc. 1-3. Two months after the state court action commenced, Plaintiff responded to Defendant's request for admission, admitting that the amount in controversy exceeded statutory requirement. *Id.* The remainder of Plaintiff's litigation strategy, however, suggests that Plaintiff relied on other tactics to "manipulat[e] the removal statute so as to prevent [Dollar General] from removing the case to federal court." *Rantz*, 2017 WL 3188415, at *5.

When concealment of the amount in controversy is not an issue, courts look to the way in which the plaintiff pursued their claims against the forum defendant, conducting a qualitative, not quantitative, analysis. *Jalbert v. Raymond James & Assocs., Inc.*, No. 23-505, 2024 WL 1742246, at *4 (W.D. La. Jan. 3, 2024) (citing *Estate of Ross v. Eldridge*, No. 22-660, 2022 WL 17096997, at *4 (S.D. Miss. 2022) and *Manuel v. Patterson*, No. 21-1590, 2021 WL 4452800, at *2 n. 1 (E.D.

6

La. Sept. 29, 2021)). Courts in this circuit have found the following to be bad faith indicators: failing to serve the non-diverse defendant with process, neglecting to seek a default judgment, only minimally pursuing the claim against the forum defendant, dismissing a claim against the forum defendant shortly after the expiration of the one-year removal deadline, failing to include nondiverse-defendant fact witnesses in trial witness list, failing to use an expert against the nondiverse defendant, and concealing a settlement agreement with a forum defendant. *Id.* (collecting and explaining cases).

A qualitative analysis of the facts present on this record demonstrates Plaintiff's clear and convincing attempts to flout the removal statute by holistically failing to prosecute her case until a few months before the one-year removal period elapsed. After Defendant first removed this case in August 2024, Plaintiff promptly moved for remand in September. R. Doc. 10, Case No. 24-2111 (E.D. La. Sept. 25, 2024). This Court granted Plaintiff's remand motion in early December 2024. R. Doc. 13 at 5–6, Case No. 24-2111 (E.D. La. Dec. 3, 2024). Yet counsel for Plaintiff admitted in a May 2025 e-mail that by that point, he had failed to propound discovery onto any Defendant, take the corporate deposition of Dollar General, take the deposition of Miller, and answer discovery propounded onto Plaintiff by Dollar General in July 2024. R. Doc. 1-10 at 1. Plaintiff provides no explanation for her swift litigation of the remand motion but failure to engage in discovery within the one-year removal period.

The arguments advanced during the first removal/remand further adds to this Court's wariness of Plaintiff's actions. Defendant argued in its first removal that Miller's citizenship should not be considered in the diversity jurisdiction analysis because Plaintiff improperly joined Miller to defeat diversity. R. Doc. 1 at 4–5, Case No. 24-2111 (E.D. La. Aug. 27, 2024). Plaintiff pressed that she pleaded a viable claim against Miller, defeating Defendant's argument of improper

7

joinder. R. Doc. 10, Case No. 24-2111 (E.D. La. Sept. 25, 2024). In granting Plaintiff's first motion to remand, this Court conducted a 12(b)(6)-type analysis and, confined to the evidence alleged in Plaintiff's Petition, found that Plaintiff pleaded sufficient facts to state a cognizable claim against Miller. R. Doc. 13 at 5–6, Case No. 24-2111 (E.D. La. Dec. 3, 2024).

Now, as previewed, the Court has the benefit of observing Plaintiff's conduct *after* she argued to this Court that she could maintain a cause of action against Miller. Plaintiff made no effort to depose or propound discovery onto Miller, nor attempted to explain why her counsel canceled Miller's deposition shortly before it was set to occur—nearly eleven months after commencement of this suit and five months after this Court remanded the case to state court. *See* R. Doc. 5-1 (arguing that "common scheduling obstacles occurred throughout the year"). Plaintiff proffers one argument as to why she did not act in bad faith: that Defendant's timeline of Plaintiff's actions "merely demonstrate[s] . . . a number of common scheduling obstacles occurred throughout the year, necessitating delays in litigation that occur in nearly every type of case." *Id.* at 7. Without any evidence or further argumentation in support of this contention, and on the facts before the Court, a qualitative analysis confirms that Plaintiff's proffered excuse is not enough to overcome Defendant's circumstantial evidence that Plaintiff delayed litigating her claims until the one-year removal period passed.

While the Court hesitates to claim that it understands Plaintiff's litigation strategy, it steadfastly observes a concerning pattern of behavior on Plaintiff's part. One e-mail string submitted by Defendant—the accuracy of which is not challenged by Plaintiff—reveals efforts by Defendant's counsel to schedule Plaintiff's and Miller's deposition as early as September 2024. R. Doc. 1-5. Unless another e-mail chain exists evidencing Plaintiff's reply e-mails making efforts to set Plaintiff's deposition, between September 2024 and January 2025, Plaintiff's counsel only

8

replied to Defendant's e-mails once in September. *Id.* at 16–17. On January 6, 2025, counsel for Defendant sent to counsel for Plaintiff "We have yet to receive your client's responses to discovery propounded on 7/17/25. I am setting a Rule 10.1 Conference for 1/14/25 at 9:30am to discuss discovery and deposition dates. Please let me know if that date/time does not work for you." *Id.* at 16. Then, on January 14, 2025, Defendant's counsel replied to the e-mail thread, stating "I tried reaching you for the Rule 10.1 Conference set below, but you were unavailable. I can give a 2-week extension to produce discovery and some deposition dates for Ms. Garnett. Please let me know if that works." *Id.* Even after this courtesy and yet another extension of time to respond, on the record before the Court, Plaintiff did not work with Defendant to set Plaintiff's deposition nor respond to the July 2024 interrogatories and requests for production.

Defendant filed a motion to compel on February 5, 2025—nearly five months after serving its initial written discovery and after months of following up with Plaintiff. *Id.* Then, after the state court granted Defendant's motion to compel, an unrefuted e-mail string evidences that Plaintiff's counsel told Defendant's counsel that an April 15th deposition date for Plaintiff "will not work." R. Doc. 1-6. Defendant's counsel replied to the e-mail, stating that "Judge Smith ordered April 15 at 10am. We can do it prior to 4/15 if you're available." *Id.* at 5. In response, Plaintiff's counsel replied "[s]corched earth law it is." R. Doc. 1-6.

Considering that Defendant waited over five months to file its motion to compel, and then set a Rule 10.1 conference in January 2025 that Plaintiff did not attend because Plaintiff's counsel was again "unavailable," the Court hardly finds Defendant's efforts to comply with a court order to be "scorched earth law." Instead, the Court notes a pattern of conduct by Plaintiff's counsel of waiting months to reply to e-mail chains, ignoring requests to set depositions, and appearing to avoid the discovery process wholesale. Notably, Plaintiff's counsel did not submit its state court

9

opposition brief to the motion to compel with its Motion to Remand, so this Court cannot assess whether Plaintiff advanced any arguments to the state court that could explain her delays and allow this Court to find her actions to be done in good faith. Without the benefit of Plaintiff's explanation for the foregoing conduct, the Court can only infer that Plaintiff's counsel purposely delayed discovery to circumvent the removal statute, knowing that Defendant intended to remove this case to federal court since it had already attempted to do so just two months after Plaintiff filed her state court action.

Plaintiff's conduct relative to Miller's deposition is highly persuasive to this Court that Plaintiff only minimally pursued her claims against Miller after this Court granted her first remand motion and did so to run out the one-year removal timeclock. After Plaintiff and Defendant seemingly successfully scheduled Plaintiff's deposition for April 2, 2025, Defendant suggested taking Ms. Miller's deposition that same day. R. Doc. 1-6 at 4. Defendant also provided additional dates she could be available, but Plaintiff simply replied "I will need to take her depo at a later date." *Id.* at 3. Defendant replied, requesting that Plaintiff's counsel "please send us some dates . . . in April/May." *Id.* at 2. Plaintiff's counsel replied that his "April is jam packed" before all counsel agreed on a deposition date for Ms. Miller of May 22, 2025 on April 3, 2025. *Id.* at 1–2.

Five days later, Miller filed her motion for summary judgment. R. Doc. 1-7. The state court set it for hearing on May 27, 2025. *Id.* at 1. On May 8, exactly a month after Miller filed her summary judgment motion, Plaintiff's counsel e-mailed Defendant, stating that "the date of the hearing doesn't give [him] near enough time to conduct the discovery necessary to file [an] opposition, including taking Ms. Miller's depo, issuing / receiving DG's discovery responses, DG's 1442 depo, etc." R. Doc. 1-10 at 1. He then asked, "Are yall willing to bump the MSJ hearing

10

date?" *Id.* Defendant replied, stating that it "can't agree to continue the MSJ [because w]e are working with a tight deadline to remove this case back to the EDLA." *Id.*

A few days later, Plaintiff filed an opposed *ex parte* motion asking the state court to continue Miller's summary judgment hearing because:

> Plaintiff is actively engaged in trying to obtain discovery from Defendants, including the deposition of defendant, Jakoyia Miller, which is currently set to take place on May 22, 2025. The testimony of Ms. Miller is absolutely critical to Plaintiff's ability to meaningfully oppose Defendant's motion. However, Plaintiff's opposition to the motion for summary judgment is due PRIOR to Defendant's deposition. Because Plaintiff has not yet had an opportunity to perform adequate discovery, under La. C.C.P. art. 966, the hearing should be continued until Plaintiff has had that opportunity.

R. Doc. 1-11 at 1. The state court continued the hearing to June 23, 2025—almost two weeks after the one-year removal deadline. R. Doc. 1-12; *see also* R. Doc. 1-1 (Plaintiff's Petition, fax-filed on June 10, 2024 and filed on June 30, 2024). Then, after the state court reset the summary judgment hearing, Plaintiff canceled Miller's May 22 deposition. R. Doc. 1-13. Thus, with only weeks before Defendant's June 10, 2025 one-year removal deadline, Plaintiff not only had not conducted any discovery relative to *any* defendant—she also did not follow through in taking the deposition that served as the crux of her argument to the state court as to why it should reschedule the summary judgment hearing. The timing of all of this is, at the bare minimum, deeply suspicious.

The Court's suspicion is only heightened by Plaintiff's subsequent actions. Plaintiff filed an opposition to Miller's summary judgment motion a week before the one-year deadline. R. Doc. 1-14. In it, she did advance materially the same arguments that she advanced in her prior *ex parte* motion to continue the hearing. *Compare* R. Doc. 1-14, Summary Judgment Opposition, at 3 ("In this case, Plaintiff has not had the opportunity to conduct adequate discovery. Plaintiff is actively

11

engaged in trying to obtain discovery from defendants, including the deposition of defendant, Jakoyia Miller. The deposition was previously scheduled on May 22, 2025, but due to a scheduling conflict, the deposition was unable to occur. The testimony of Ms. Miller is absolutely critical to Plaintiff's ability to meaningfully oppose defendant's motion.") *with* R. Doc. 1-11, Motion to Continue, at 1 ("Plaintiff is actively engaged in trying to obtain discovery from Defendants, including the deposition of defendant, Jakoyia Miller, which is currently set to take place on May 22, 2025. The testimony of Ms. Miller is absolutely critical to Plaintiff's ability to meaningfully oppose Defendant's motion.").

     First, what is missing from Plaintiff's briefing and from this Court's record is any legitimate *reasoning* from Plaintiff as to why she had not had adequate time to complete discovery. Defendant propounded discovery onto Plaintiff in July 2024. None of Plaintiff's briefing, neither before this Court relative to the motion to remand nor in the state court relative to the motions to compel and for summary judgment, addresses personal issues faced by the Plaintiff or her counsel that could afford this Court the ability to infer that Plaintiff acted in good faith in consistently delaying making any advancements towards resolution in this case. *See, e.g.*, *Solaija Enters. LLC v. Amguard Ins. Co.*, No. 19-929, 2019 WL 2329832, at *2 (S.D. Tex. May 31, 2019) (refusing to find bad faith when plaintiff submitted explanations for delay, including dissolution of its original counsel's firm, delayed service on defendants due to active resolution negotiations with insurance company, and where plaintiff agreed to dismiss forum defendant more than twenty-one months after filing suit).

     Second, the Court finds it suspect that Plaintiff would ask the state court to continue the summary judgment hearing when the first hearing was set before the June 10, 2025 removal deadline but not when the hearing was set *after* the June 10, 2025 removal deadline even though

12

Plaintiff had still not deposed Miller. Plaintiff provides this Court with no strategic explanation for this action. Before Plaintiff filed her *ex parte* motion to continue and her summary judgment opposition, Defendant *reminded her* on May 8, 2025—just over a month before the removal deadline—that it was "working with a tight deadline to remove this case back to the EDLA." R. Doc. 1-10 at 1. Taking this circumstantial evidence altogether, the Court can only determine that Plaintiff's actions, at least after Defendant's May 8, 2025 e-mail, demonstrate a purposeful attempt to circumvent the removal statute and prevent Defendant from filing its second removal notice within the one-year period.

Overall, the Court finds the facts present in this case to be most analogous to other cases in this circuit wherein courts have found plaintiffs to have acted in bad faith. *See Hoyt*, 927 F.3d at 292 (finding that the plaintiffs "pursued their claims against [the nondiverse defendant] only half-heartedly" before dismissing the forum defendants two days after the one-year removal period); *Garcia v. Lucky Bros., Inc.*, No. 25-156, 2025 WL 2306845, at *7 (E.D. Tex. Aug. 8, 2025) (finding bad faith when plaintiff allowed case to remain "completely idle for 358 days" and "did not request the issuance of citation to serve either defendant until 360 days after she initially filed suit"); *Jalbert*, 2024 WL 1742246, at *6 (finding bad faith when plaintiff "only minimally pursu[ed] the claims against [the forum defendant]; fail[ed] to investigate the evidence as to [the forum defendant]; failed to include [the forum defendant] in his 'will-call' witness list; fail[ed] to use an expert to evaluate [the forum defendant's] action; and fail[ed] to apprise himself as to the case against [the forum defendant] prior to his deposition"); *Flores v. Intex Rec. Corp.*, No. 20-73, 2020 WL 6385679, at *4 (S.D. Tex. July 2, 2020) (finding bad faith when the plaintiffs "never—for over a year—sought a default judgment against the" forum defendants after they failed to answer the petition and when plaintiffs did not pursue any discovery against the forum defendants).

Accordingly, the Court finds that Dollar General met its heavy burden of establishing that Plaintiff acted in bad faith by purposely failing to prosecute its case after being on notice since two months after initiating suit that Defendants wished to remove the instant action. Because this Court finds bad faith, Defendant's removal is timely. The Court will deny Plaintiff's motion to remand.

V.   **CONCLUSION**

Considering the foregoing,

**IT IS ORDERED** that Plaintiff's motion to remand is hereby **DENIED**.

New Orleans, Louisiana, this 27th day of October, 2025.

_____
THE HONORABLE ELDON E. FALLON